# IN THE UNITED STATED DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ENGLAND LOGISTICS, INC.<br><br>    Plaintiff,<br><br>vs.<br><br>ARB TRANSPORTATION INC., an Illinois corporation; and ANDREW SZCZECHULA, JR., an individual;<br><br>    Defendants. | **COMPLAINT**<br><br><br><br>Case No.:   22-cv-5918<br><br>Judge: |

Plaintiff England Logistics, Inc., in its individual capacity and as assignee of Fairlife, LLC ("Fairlife"), for its Complaint against defendants ARB Transportation Inc., and Andrew Szczechula, Jr., states and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff England Logistics, Inc. (hereinafter "Plaintiff" or "England") is a Utah corporation with its principal place of business located in Salt Lake County, Utah, which operates as an interstate property (freight) "broker" (as such term is defined in 49 U.S.C. § 13102(2)) conducting business under authority granted to it to do so by the Federal Motor Carrier Safety Administration ("FMCSA") under license number MC 635748 and USDOT number 2241506.

2. Defendant Arb Transportation Inc. (hereinafter "Carrier" or "ARB") is an Illinois corporation with its principal place of business located in Bridgeview, Illinois that operates as a motor carrier under authority granted to it to do so by the FMCSA under MC no. 1210861 and US DOT no. 3852902.

3. Defendant ARB has appointed agents for service of process in the State of Illinois, Andrew Szczechula Jr. and Edward D McNamara Jr., agent for Truckers Nationwide Inc., pursuant to 49 CFR § 366.1 *et. seq*.

4. Defendant Andrew Szchechula, Jr. ( (hereinafter "Szchechula") is an individual residing in Illinois and is the president of ARB.

5. Plaintiff England is the assignee of Fairlife regarding the shipment and claim associated with damaged cargo that is the subject of this action. Fairlife was the receiver/consignee and beneficial owner of the cargo that is the subject of this action.

4. Jurisdiction and venue are proper in this Court pursuant to 49 U.S.C. § 14706(d)(1) and/or (d)(2) and 28 U.S.C. § 1337(a) because the alleged liability is based, at least in part, upon a Federal question of law under the Carmack Amendment, the amount in controversy for each single shipment involved in this case exceeds $10,000, and, upon information and belief, defendant ARB, at all times relevant hereto, had its principal place of business in Illinois and operated through the State of Illinois on a continuous and systematic basis..

5. Jurisdiction and venue are also proper in this Court with respect to defendant Andrew Szczechula, Jr., because Szczechula resides, on information and belief, in the City of Chicago, Illinois.

**BACKGROUND AND GENERAL ALLEGATIONS**

6. On or about July 23, 2021, plaintiff England and defendant ARB entered into a written Transportation Brokerage Agreement (hereinafter the "England Agreement"), a copy of which is attached hereto as Exhibit 1.

2

7. The England Agreement was signed on behalf of defendant ARB by defendant Szczechula, who executed the England Agreement in his role as "Opes (sic) Manager" for ARB.

8. Pursuant to the England Agreement, England agreed to arrange for defendant ARB to transport loads of freight for England's customers. Pursuant to the England Agreement, defendant ARB agreed to perform transportation services as a motor carrier for the brokered loads under motor carrier authority granted to defendant ARB by the FMCSA.

9. The England Agreement provides that, "[England] may offset claims against CARRIER's invoices." *See,* England Agreement at § 2.4.

10. The England Agreement further provides that, "CARRIER's liability for any cargo damage, loss, or theft from any cause shall be determined under the Carmack Amendment, 49 U.S.C. § 14706." *See,* England Agreement at § 3.3.2.

11. The England Agreement further provides that, "CARRIER shall defend, indemnify and hold [England] and its shipper customer harmless from any and all losses, claims, actions, suits, demands, or damages arising out of or related to CARRIER's acts, omissions, performance, or breach of any warranty, representation or obligation under this Agreement." *See,* England Agreement at § 3.5.

12. The England Agreement further provides that, "CARRIER's indemnification liability herein for freight loss and damage claims shall include legal fees which shall constitute special damages, the risk of which is expressly assumed by CARRIER, and which shall not be limited by any liability of CARRIER under 3.3.2 above." *See,* England Agreement at § 3.3.3.

13. Pursuant to the England Agreement, ARB represented and warranted that it "will not…transfer the shipment[] hereunder, without the prior consent of BROKER" and ARB agreed

3

that, "CARRIER shall comply with shipper seal requirements communicated to CARRIER on any rate confirmation, bill of lading, or otherwise." *See*, England Agreement at §1.5 and §1.12.

14. On or about February 23, 2022, plaintiff England arranged for defendant ARB to transport a load of dairy products (hereinafter "the Load") from Spring Lake, Michigan to Waco, Texas, and the parties confirmed the agreed-upon rate by exchanging a Rate Confirmation

15. As specified in the Rate Confirmation, England specifically directed ARB, and defendant ARB specifically agreed, not to break the seal on the trailer utilized to transport the dairy products for England and England's customer. See Rate Confirmation attached hereto as Exhibit "2".

16. On or about February 23, 2022, defendant ARB took actual physical possession of the Load at the origin of Bay Logistics in Spring Lake, Michigan and commenced transportation of a load of freight consisting of dairy products to Fairlife's agent in Waco, Texas.

17. At the time that defendant ARB accepted actual physical possession of the Load on February 23, 2022, the Load was in good condition.

18. Upon arrival at the appointed destination in Waco, Texas, the Load was damaged, the load had been transloaded onto a different trailer and approximately twenty-five percent (25%) of the load was missing (sometimes referred to herein as the "Missing Portion of the Load"). As a result of ARB's actions in transloading the Load to a different trailer, the entire Load was rendered valueless and could not be sold for salvage or otherwise.

19. The value of the Load in good condition at the time that defendant ARB took possession of the same and accepted the same in its capacity as a motor carrier was $43,516.00.

20. Due to transloading of the Load onto another trailer and the fact that approximately twenty-five percent (25%) of the load was missing, the safety of the Load was compromised by the potential for contamination and adulteration of the Load.

21. Accordingly, in order to mitigate the exposure to potential liability, to fulfill its distribution obligations, and to protect the integrity of the supply chain from potentially contaminated and/or adulterated food products, the receiver/consignee, Fairlife, was compelled to dispose of the Load.

22. The cost to transport the Load to an appropriate disposal site was $625.00, which Fairlife paid to another licensed motor carrier, and Fairlife paid an additional $4,012.00 in order to properly dispose of the product.

23. A cargo damage claim was timely submitted to defendant ARB as the originating and delivering carrier of the Load in the principal amount of $48,153.00, consisting of the value of the Load when defendant ARB took possession ($43,516.00), disposal costs ($4,012.00), and transportation to the disposal site ($625.00).

24. Defendant ARB has refused and/or failed to pay the claim associated with the Load.

**FIRST CAUSE OF ACTION**
**ARB TRANSPORATION INC.**
**(Breach of Contract)**

25. Plaintiff hereby incorporates by reference the allegations contained in each of the foregoing paragraphs hereof as if the same were fully set forth and realleged herein.

26. Pursuant to the England Agreement, defendant ARB represented that it was a licensed motor carrier and would act as a motor carrier with respect to all freight tendered to it by Plaintiff pursuant to the England Agreement.

27. Pursuant to the England Agreement, defendant ARB agreed that it would transport all freight tendered to it pursuant to such agreement under defendant ARB's own motor carrier operating authority.

28. Pursuant to the England Agreement, defendant ARB agreed that it would be liable and pay for any loss of or damage to cargo tendered to it pursuant to such agreement and that its liability for any such loss or damage to cargo would be determined under the Carmack Amendment – 49 U.S.C. § 14706 -- and that defendant ARB would be liable for attorney fees as an element of special damages with respect to cargo loss or damage claims.

29. Defendant ARB breached the England Agreement including, but not limited to, by failing to comply with shipper seal requirements communicated to ARB and by failing to pay for, indemnify, and hold plaintiff England and/or Fairlife harmless from and/or compensate plaintiff England or Fairlife for the $48,153.00 in damages with respect to the Load, which plaintiff England and its customer Fairlife suffered as a result of defendant ARB's material breach of the England Agreement.

30. Plaintiff England has fulfilled all of its obligations to ARB under the England Agreement. Pursuant to its rights under the England Agreement, plaintiff England has offset the amount of $425.00 that, except for the claim relating to the Load, would have otherwise been owing to defendant ARB. Such $425.00 has been applied toward the amount of the cargo damage claim, leaving a balance due of $47,728.00.

31. Plaintiff England has and will incur costs and attorney fees as a result of defendant ARB's failure to fulfiill its obligations under the England Agreement.

32. By failing to pay, indemnify, and hold plaintiff England and/or Fairlife harmless

for liability and damages arising from defendant ARB's performance and breach of its agreement with plaintiff England, defendant ARB is therefore liable to plaintiff England in the principal amount of $47,728.00, plus interest, costs, disbursements, and attorney's fees as allowed pursuant to the England Agreement or as otherwise may be authorized, allowed or required by law or in equity.

**SECOND CAUSE OF ACTION
ARB TRANSPORTATION INC.
(Carmack Amendment)**

33. Plaintiff hereby incorporates by reference the allegations contained in the foregoing paragraphs hereof as if the same were fully set forth and re-alleged herein.

34. At all times relevant hereto with respect to the Load, defendant ARB was acting as the originating and receiving carrier, the delivering carrier, or another carrier over whose line or route the Load was transported within the meaning of the Carmack Amendment, 49 U.S.C. § 14706.

35. On or about February 23, 2022, defendant ARB received possession of the Load in good condition.

36. While the Load was in the possession, care, custody, or control of defendant ARB, a portion of the Load was lost and the remainder of the Load was damaged.

37. Due to such loss and/or damage to the Load, plaintiff England, as assignee of Fairlife, has suffered damages in the principal amount of $48,153.00, less the $425.00 that was offset against such amount, leaving damages suffered of $47,728.00 or such other amount as may be proven at trial or otherwise.

38. Defendant ARB is liable to plaintiff England in the principal amount of $47,728.00, plus interest, costs and disbursements, and attorney fees as may be allowed or required by law or in equity.

**THIRD CAUSE OF ACTION
ARB TRANSPORTATION INC., and SZCHECULA
(Conversion)**

39. Plaintiff hereby incorporates by reference the allegations contained in the foregoing paragraphs hereof as if the same were fully set forth and re-alleged herein.

40. Upon information and belief, defendant Szchechula personally took possession and/or control over the Missing Portion of the Load, converting it for his own personal benefit.

41. Defendant Szchechula willfully interfered with the Missing Portion of the Load without authority to do so and for their own personal gain.

42. Szchechula was not authorized to take the Missing Portion of the Load and did so without lawful justification.

43. At all relevant times, the receiver/consignee, whose claim has been assigned to and is now owned by plaintiff England, was entitled to the entirety of the Load, including the converted Missing Portion of the Load.

44. By taking the converted Missing Portion of the Load and refusing to return it, defendant Szchechula rendered the remaining portion of the Load valueless.

45. Defendant Szchechula is, along with ARB, jointly and severally liable to plaintiff England for conversion in an amount to be proven at trial, but no less than the principal amount of $48,153.00, less the $425.00 that was offset against such amount, leaving damages suffered of $47,728.00.

## FOURTH CAUSE OF ACTION
## ARB TRANSPORTATION INC. and SZCHECULA
## (Fraud)

46. Plaintiff hereby incorporates by reference the allegations contained in the foregoing paragraphs hereof as if the same were fully set forth and re-alleged herein.

47. At the time ARB accepted the Load for transportation, England provided a Rate Confirmation to ARB specifically stating "DO NOT BREAK THE SEAL!" and "RECEIVER MUST REMOVE SEAL."

48. ARB knew that the reason it was directed not to break the seal is because the Load consisted of dairy products intended for human consumption and maintaining the integrity of the trailer is essential to ensure against contamination or adulteration of the Load.

49. On the date that ARB picked up the Load, it arrived at the shipper's location with a trailer bearing Trailer no. 53042, which number was written on the inside of the Trailer.

50. At origin, defendant ARB's trailer bearing Trailer No. 53042 was loaded with the dairy products identified on the bill of lading and ARB Trailer No. 53042 and Seal Number 5665823 was identified on the face of the bill of lading. *See* Origin bill of lading attached hereto as Exhibit "3".

51. After receipting for the Load, ARB left the shipper's location with ARB Trailer No. 53042 for the purpose of transporting the Load to its destination in Waco, Texas.

52. On or about February 28, 2022, three days after the load was due to be delivered, ARB arrived at the receiver and two days later, ARB delivered the shipment.

53. At the time ARB arrived at the receiver and tendered delivery, the Load was being transported by ARB on an entirely different trailer identified as ARB trailer No. 53008.

54. At destination, ARB's driver tendered the load to the receiver on ARB Trailer No. 53008, and presented a bill of lading that specified ARB Trailer No. 53008 on its face. *See* Destination bill of lading attached hereto as Exhibit "4".

55. During the transportation, on information and belief, ARB, through or with the authority of its operations manager, Szczechula, altered the bill of lading to misrepresent the trailer that had been used to pick up the Load in order to conceal the fact that ARB had transloaded the Load.

56. ARB and Szczechula knew that the Load would be rejected if it was discovered that ARB had transloaded the Load during transportation because the shipper and receiver required that the trailer remain sealed throughout transportation to ensure the Load was not contaminated or adulterated.

57. The receiver accepted delivery of the Load in reliance on the altered bill of lading that reflected that the trailer on which ARB tendered delivery bore the same trailer number that appeared on the face of the bill of lading.

58. Following delivery, ARB and its operations manager, Szczechula, caused an invoice and copy of the altered bill of lading to be submitted to England for payment, and England relied on the invoice and altered bill of lading to tender payment.

59. After unloading the Load, the receiver later discovered that approximately twenty-five percent (25%) of the load was missing and further investigation revealed that ARB had transloaded the Load to a different trailer in violation of the parties' agreement and had altered the bill of lading to conceal its actions.

60. ARB and, on information and belief, Szczechula, altered the bill of lading with the

intent to induce the receiver to accept delivery of the Load and to induce England to pay ARB's invoice.

61. The receiver and England reasonably believed that the bill of lading tendered by ARB at delivery and submitted to England by ARB and Szczechula was true, and the deception was not discovered until a later count found twenty-five percent (25%) of the load was missing.

62. As a consequence of ARB's and, on information and belief, Szczechula's deception, England suffered damages.

WHEREFORE, plaintiff England respectfully requests that the Court enter judgment against the defendant ARB and in favor of plaintiff England as follows:

A. On its First Cause of Action, that plaintiff England be awarded judgment against defendant ARB Transportation Inc. in the principal amount of $47,728.00 or such other amount that may be proven at trial or otherwise, plus interest accruing at the statutory prejudgment rate from the date that the Load was damaged — February 25, 2022 — until judgment is entered, plus an award of costs and attorney' fees incurred in connection with this matter; and, that the Court awards such other relief as the Court deems just and proper under these circumstances.

B. On its Second Cause of Action, that plaintiff England be awarded judgment against defendant ARB Transportation Inc. in the principal amount of $47,728.00 or such other amount that may be proven at trial or otherwise, plus interest accruing at the statutory prejudgment rate from the date that the Load was damaged — namely, February 25, 2022 — until judgment is entered; and, that the Court award such other relief as the Court deems just and proper under these circumstances.

      C.      On its Third Cause of Action, that plaintiff England be awarded judgment against defendants ARB Transportation Inc. and Andrew Szczechula, jointly and severally, in the principal amount of $47,728.00 or such other amount that may be proven at trial or otherwise, plus interest accruing at the statutory prejudgment rate from the date that the Load was damaged — namely, February 25, 2022 — until judgment is entered, plus punitive damages in an amount to be determined at trial or otherwise; and, that the Court award such other relief as the Court deems just and proper under these circumstances.

      D.      On its Fourth Cause of Action, that plaintiff England be awarded judgment against defendant ARB Transportation Inc. and Andrew Szczechula, jointly and severally, in the principal amount of $47,728.00 or such other amount that may be proven at trial or otherwise, punitive damages, plus interest accruing at the statutory prejudgment rate from the date that the Load was damaged — namely, February 25, 2022 — until judgment is entered, plus punitive damages in an amount to be determined at trial or otherwise; and, that the Court award such other relief as the Court deems just and proper under these circumstances.

Respectfully submitted,

ENGLAND LOGISTICS, INC.

By: */s/ Ryan A. Mahoney*
      One of Its Attorneys

Matthew P. Barrette
Ryan A. Mahoney
BLITCH WESTLEY BARRETTE S.C.
1550 Spring Road, Suite 120
Oak Brook, IL 60523
(312) 283-4220
mbarrette@bwesq.com
rmahoney@bwesq.com